Argued and submitted February 6, reversed and remanded for new trial
April 30, 1997

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL JOHN ROSS,
*Appellant.*

(70201; CA A92592)

938 P2d 797

John Henry Hingson III argued the cause and filed the brief for appellant.

Timothy Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals from his conviction for driving while under the influence of intoxicants (DUII). ORS 813.010(1).[1] He assigns error to the admission of the arresting officer's testimony that his behavior was consistent with a .081 percent blood alcohol content (BAC) test result. We reverse.

After observing defendant's car traveling at 72 miles per hour in a 55-mile-per-hour zone, Officer Wilcox stopped the vehicle. Wilcox asked defendant to step out of his vehicle and perform field sobriety tests. Defendant performed some of the tests correctly and failed others, including a Horizontal Gaze Nystagmus (HGN) test. Wilcox then arrested defendant for DUII and transported him to a police station. An Intoxilyzer test was administered there with a result of .081 percent BAC. Under ORS 813.010(1)(a), the legal limit is .08 percent.

Before trial, defendant objected to the state's proposed use of Wilcox's testimony to demonstrate that defendant's physical condition corroborated the BAC test result. The trial court ruled before trial that the testimony was admissible. At trial, the prosecutor asked Wilcox in the state's case in chief:

"Q. The .081 blood alcohol content, was that consistent with the defendant's behavior that you observed personally?

"A. Yes, it was."

On appeal, defendant assigns Wilcox's trial testimony as error. His argument under his assignment presents two issues: (1) whether the evidence is admissible under ORS 813.010(1)(a);[2] and (2) whether Wilcox was qualified to

---

[1] ORS 813.010(1) provides, in part, that a person commits the offense of driving while under the influence if the person drives the vehicle while the person has .08 percent or more by weight of alcohol in the blood of the person (ORS 813.010(1)(a) or is under the influence of intoxicating liquor (ORS 813.010(1)(b)).

[2] ORS 813.010(1)(a) provides:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

express the opinion that defendant's behavior was consistent with his BAC. *See State v. Jacobs*, 109 Or App 444, 819 P2d 766 (1991) (holding that an arresting officer's participation in numerous DUII investigations was insufficient to qualify him as an expert to give an opinion, based on observable signs of intoxication, as to the defendant's BAC).

Arguably, the case law is in conflict in regard to the first issue. In *State v. Clark*, 286 Or 33, 593 P2d 123 (1979), the court held:

> "[I]n a prosecution for driving under the influence of intoxicating liquor under ORS 487.540(1)(a),[3] the defendant may offer testimony of non-expert witnesses relating to any or all of the common symptoms or 'signs' of intoxication for the purpose of impeachment of the accuracy of a 'chemical analysis' by a Breathalyzer test showing a blood alcohol content of .10 percent or more * * *." 286 Or at 44.

The court ruled that a defendant in a DUII prosecution is entitled to offer circumstantial evidence to demonstrate a disparity between a chemical test result and other facts from which it can be inferred that the chemical test is defective. Such circumstantial evidence could include the absence of: an odor of alcohol on the defendant's breath, a flushed appearance, a lack of muscular coordination, speech impairment, disorderly or unusual conduct and other indicia of mental or physical impairment. Based on the holding in *Clark*, the state argues that circumstantial evidence is similarly admissible to corroborate a BAC test result.

The state's argument finds opposition in *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995), where the court held that evidence of a HGN test result was not admissible under ORS 813.010(1)(a) "to establish a person's BAC." 321 Or at 289. It stated:

> "In this court, for the first time, the state acknowledges that HGN test evidence is *not* admissible to prove that a defendant was driving while having a BAC of .08 percent or more. Statutory law requires, as the state now concedes,

---

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person * * *[.]"

[3] ORS 487.540(1)(a) is the predecessor statute to ORS 813.010(1)(a).

that the offense of DUII with a .08 percent or more BAC may be proved *only* by a *'chemical analysis of the breath or blood of the person* made under ORS 813.100, 813.140 or 813.150.' ORS 813.010(1)(a). * * * An HGN test does not involve a chemical analysis of breath or blood. Hence, an HGN test is not a chemical test under ORS 813.010(1)(a). Under ORS 813.010(1)(a), HGN test evidence is not, therefore, admissible to prove that a person had a BAC of .08 percent or more." 321 Or at 307-08.[4] (Emphasis in original; footnotes omitted.)

The *O'Key* opinion does not mention the holding in *Clark*. The issue in this case is whether the reasoning in *O'Key* extends to indicia of intoxication other than evidence of an HGN test and renders them inadmissible as evidence under the statute, at least insofar as the state's *prima facie* case is concerned. ORS 813.010(1)(a) imposes the legal standard of a scientific measurement of blood alcohol content and provides that the measurement is "as shown by chemical analysis of the breath or blood of the person." If HGN evidence is not admissible under the statute because it is not a chemical test of the breath or blood, it follows that evidence of the observable indicia of intoxication or an opinion about the indicia is not admissible either, because neither is based on chemical tests of the breath or blood.

Moreover, in *State v. King*, 316 Or 437, 446, 852 P2d 190 (1993), the court explained:

"The legislature * * * intend[ed] that a person could commit [the] offense [of DUII] by driving with the specified BAC but [with] no perceptible impairment or by driving with a legally permissible or unknown BAC but while nonetheless perceptibly impaired, but that is not inconsistent with an intent to establish two methods of proof rather than two separate offenses. We are convinced that the legislature intended to cast a net wide enough to encompass those intoxicant-using drivers whose use could be measured in *either* manner but not so wide as to permit a person to be convicted for two separate offenses for a single episode of DUII." (Emphasis in original.)

---

[4] We followed the holding in *O'Key* in *State v. Fisken*, 138 Or App 396, 909 P2d 206 (1996), and held that an estimation of the defendant's BAC based on nystagmus cues was inadmissible evidence under ORS 813.010(1)(a).

■ If evidence other than that derived from chemical tests were admissible under ORS 813.010(1)(a), then the state could prove its charge with that evidence, thereby negating the legislature's intention that the standard of culpability for that statute be a quantified blood alcohol content unrelated to perceptible impairment. In that light, we conclude that the legislature intended that only evidence of a chemical test result could be offered by the state as proof of BAC in its case-in-chief and that the reasoning in *O'Key* extends to all evidence that is not derivative of a chemical test.

When the statute is viewed in this manner, the holding in *Clark* is not inconsistent with the reasoning in *O'Key*. In *Clark*, the state offered the result of a "Breathalyser" test that showed a BAC of .13 percent. Both parties offered testimony relating to the defendant's observable symptoms of impairment. The jury was instructed that it was required to return a guilty verdict if the test result was over the legal limit. On appeal, the defendant argued that the instruction created a conclusive presumption of guilt in violation of the Fourteenth Amendment. When the case was before us, we held that the instruction was not misleading and that the statute did not prohibit evidence that might tend to disprove the accuracy of the BAC test result, including circumstantial evidence from which it could be inferred that the result was defective. We also held that before such circumstantial evidence could be offered, a proper foundation had to be demonstrated that would usually require expert testimony.

On review, the court disagreed with our holding concerning the necessity of expert testimony as a predicate to the admission into evidence of observable signs of intoxication by the defendant. The court stated:

> "[I]t is important to keep in mind the distinction between what may be competent *substantive* evidence for the purpose of *establishing* the alcohol content of the blood of a defendant in such a case and what is competent evidence for the purpose of *impeachment* of the substantive evidence offered by the state * * *. As stated in 3 Wharton's Criminal Evidence 317, § 901 (12th ed. 1955):

'Impeaching evidence is admitted only for the purpose of attacking the credibility of the witness and not as substantive evidence or its truth * * *.' " 286 Or at 43. (Emphasis in original.)

■    Thus, the point of *Clark* is that the legislature cannot abrogate the right under the Oregon Constitution of a defendant to attack the accuracy of the BAC measurement by circumstantial evidence, including evidence that other commonly recognized indicia of intoxication did not exist. On the other hand, it does not necessarily follow that the state is entitled under the statute to offer such evidence as substantive evidence in its case-in-chief. In that respect, the holding in *Clark* is inapposite because it pertains only to what evidence is admissible to refute the BAC measurement. The statute establishes what the state must prove to demonstrate a *prima facie* violation and that is by evidence from chemical tests only.[5] For this reason, we conclude that the trial court erred when it permitted Wilcox to give the opinion that what she had observed about defendant's behavior was consistent with the BAC. The testimony was not evidence of a chemical analysis of blood or breath. Accordingly, we do not reach the state's argument that Wilcox was a qualified expert to testify about the correlation between blood alcohol content and observable indicia of intoxication.

■    Next, we must determine whether the error requires reversal. "[A] verdict against a criminal defendant may be affirmed notwithstanding trial error if the error did not affect a 'substantial right' of the defendant." *State v. Isom*, 306 Or 587, 595, 761 P2d 524 (1988). Here, the jury was told that it could convict defendant if it found that either prong of ORS 813.010(1) had been violated. The state argues that even if the trial court erred when it permitted Wilcox to render her opinion, that error did not affect the jury's verdict under ORS 813.010(1)(b). It points out that defendant admitted consuming "four or five beers" before driving and having a "little buzz" but not feeling "drunk." According to Wilcox's testimony, defendant had a strong odor of alcohol, missed his nose

---

[5] We do not decide whether, once the accuracy of the measurement is put in question, it is proper rebuttal for the state to offer evidence of indicia of intoxication that rebuts the defendant's evidence and indirectly corroborates the test result.

three of six times during the finger-to-nose test, slightly swayed during a walk-and-turn test and failed an HGN test.

On the other hand, the officer did not observe any impaired driving conduct. Defendant was stopped for operating his vehicle 72 miles per hour in a 55-mile-per-hour zone. When the officer activated her overhead lights, defendant pulled over promptly and safely. Although the officer thought his movements were slow and deliberate, defendant had no trouble in producing his driver's license and registration. The officer evaluated his speech as fair. He recited the alphabet properly and correctly performed a finger count test. When asked to perform a one-leg stand while counting out loud from 1001 to 1030, he placed his foot on the ground at the count of 1025 and held his arms out from his side about 12 inches, contrary to the officer's instructions.

According to OAR 257-30-035, which was in effect at the time of the test,[6] a breath testing machine is certified as accurate if "accuracy test performance is within a range of 0.01 high to 0.02 low from the expected value of a reference sample." The actual test result in this case was .001 percent over the statutory limit, or within the range of error. Because Wilcox's testimony served independently to corroborate the accuracy of the BAC test by impermissible means, we cannot affirmatively say that there is little likelihood that, without the testimony, a verdict rendered under ORS 813.010(1)(a) would have been the same. Similarly, it is impossible to tell what role the .081 percent BAC result played in the jury's deliberations under ORS 813.010(1)(b) regarding the conflicting evidence of impairment. We conclude that the admission of Wilcox's testimony could have affected the verdict and that defendant is entitled to a new trial.

Reversed and remanded for a new trial.

---

[6] OAR 257-30-100, now in effect, provides for the same acceptable range.