Argued and submitted March 8, reversed and remanded June 15,
petition for review allowed October 6, 2011 (351 Or 216)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JAVIER EUMANA-MORANCHEL,
*Defendant-Respondent.*

Multnomah County Circuit Court
081053188; A142632

260 P3d 501

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Peter Gartlan, Chief Defender, Office of Public Defense Services, argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

The state appeals from a pretrial order excluding testimonial evidence concerning the blood alcohol content (BAC) of defendant, who was charged with misdemeanor driving while under the influence of intoxicants. ORS 813.010. For the reasons set forth below, we reverse and remand.

For purposes of the hearing on defendant's motion to exclude, the parties stipulated to the following facts. A police officer observed defendant driving on a public roadway and, at 3:08 a.m., stopped defendant for weaving. Defendant displayed signs of intoxication and admitted to drinking three beers in a bar. Bars generally close at 2:00 a.m. but may close as late as 2:30 a.m. Another officer conducted field sobriety tests, which defendant failed, and arrested defendant for driving while under the influence of intoxicants. The second officer took defendant to a police station, where defendant submitted to a properly administered breath test, concluding at 4:42 a.m.—one hour and 34 minutes after defendant was stopped. Although the parties did not stipulate to this fact, it was undisputed at the hearing that defendant's breath test report indicates a BAC of .06 percent.

Shane Bessett, an expert in the field of alcohol absorption and dissipation, testified about the rate at which the human body absorbs and dissipates alcohol and the factors that influence absorption and dissipation. As part of that testimony, he explained Widmark's formula, a generally accepted method for calculating the rate of alcohol absorption and dissipation, and back extrapolation of BAC, a method to provide a range for a person's BAC prior to the time of the test. According to Bessett, Widmark's formula, the subject of many peer-reviewed studies and scholarly works, is used to determine the number of drinks consumed to reach a given BAC, and back extrapolation is used with Widmark's formula in instances of "any type of delay of time between time of test and time of driving." Back extrapolation of BAC relies on knowledge of a person's BAC at the time of a chemical test of the person's breath or blood.

Although the trial court found that Bessett was qualified as an expert in breath alcohol testimony, the court

concluded that it was required to exclude his testimony under *State v. Johnson*, 219 Or App 200, 182 P3d 256 (2008). Accordingly, the court entered an order excluding

"(1) Any testimony by state's expert witness referring to BAC content if that testimony would permit the jury to convict defendant based on his BAC.

"(2) Any testimony by state's expert witness that [defendant's] BAC at the time of the alleged stop was at least .08 percent."

The state appeals, contending that the trial court erred in granting defendant's motion to exclude. In the state's view, "evidence that correlates the results of the chemical test to the blood alcohol content at the time of driving is evidence based on or derived from a chemical test of the breath or blood, and it is admissible under ORS 813.010(1)(a)." Defendant responds that, under ORS 813.010(1)(a), "the state may introduce chemical test results and only chemical test results"; the state may not offer other forms of evidence as proxies for the chemical analysis of the blood or breath.

ORS 813.010(1) provides:

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant; or

"(c) Is under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance."

Here, defendant underwent a chemical analysis of his breath. Extrapolating from that chemical analysis, Bessett testified to his expert opinion regarding defendant's BAC at the time that defendant was stopped while driving. We conclude that Bessett's testimony, derived by scientific principles from a

chemical analysis of defendant's breath, was admissible evidence that defendant's BAC was .08 percent or more "as shown by chemical analysis of the breath."

As the Supreme Court explained in *State v. O'Key*, 321 Or 285, 308, 899 P2d 663 (1995), ORS 813.010(1)(a) requires that "the offense of DUII with a .08 percent or more BAC may be proved *only* by a '*chemical analysis of the breath or blood of the person* made under ORS 813.100, 813.140 or 813.150.'" (Footnote omitted; emphasis in *O'Key*.) Accordingly, the results of a horizontal gaze nystagmus (HGN) test could not be offered to prove that the defendant had a BAC of .08 percent or more, because that test "does not involve a chemical analysis of breath or blood. Hence, an HGN test is not a chemical test under ORS 813.010(1)(a)." *O'Key*, 321 Or at 308.

We applied that principle in *State v. Ross*, 147 Or App 634, 938 P2d 797 (1997). There, the trial court admitted the arresting officer's testimony that the defendant's behavior was consistent with a BAC test result of .081 percent. 147 Or App at 636. Reversing, we reasoned that, if HGN evidence was not admissible because it was not a chemical test, "it follows that evidence of the observable indicia of intoxication or an opinion about the indicia is not admissible either, because neither is based on chemical tests of the breath or blood." *Id.* at 638. We further explained:

> "If evidence other than that derived from chemical tests were admissible under ORS 813.010(1)(a), then the state could prove its charge with that evidence, thereby negating the legislature's intention that the standard of culpability for that statute be a quantified blood alcohol content unrelated to perceptible impairment. In that light, we conclude that the legislature intended that only evidence of a chemical test result could be offered by the state as proof of BAC in its case-in-chief and that the reasoning in *O'Key* extends to *all evidence that is not derivative of a chemical test*."

*Id.* at 639 (emphasis added).

We returned to that issue in *Johnson*, 219 Or App 200. There, an Intoxilyzer test showed that the defendant had a BAC of .07 percent about an hour after he was stopped. At the defendant's trial, a police officer, Brennan, testified

that, based on his observations of the defendant's behavior, the defendant had a BAC at or above .08 percent when he was stopped. The state conceded that the admission of Brennan's testimony was erroneous but argued that the error was harmless. *Id.* at 202-03. Citing *Ross*, we accepted the state's concession. *Id.* at 204-05. We then turned to the state's harmless error arguments. We first rejected the argument that the evidence of the defendant's impairment, which supported a conviction under ORS 813.010(1)(b), was so overwhelming that there was little likelihood that the erroneously admitted evidence affected the verdict. *Id.* at 205-06. We then turned to the state's second harmless error argument:

> "The state next argues that the error was harmless because the jury could not have convicted defendant based on his BAC, given that it was under .08 percent. In other words, in the state's view, the jury must have convicted defendant under ORS 813.010(1)(b) based on impairment, so the error in admitting Brennan's testimony as to defendant's BAC was harmless.

> "The state's argument misses the point. The jury was not *permitted* to convict defendant based on his BAC, given that it was not proved by chemical analysis to be at least .08 percent. However, as the prosecutor emphasized in her closing argument, Brennan's testimony suggested that defendant's BAC *was* at least .08 percent when he was driving. Nothing in the record indicates that the jury was informed that a conviction under ORS 813.010(1)(a) required proof by chemical analysis—in other words, that Brennan's opinion as to defendant's BAC was insufficient. Because the jury may have found that defendant's BAC was .08 percent or more and convicted him on that ground, the error was prejudicial."

*Id.* at 206 (emphasis in original). Thus, the erroneously admitted testimony purported to establish the defendant's BAC based on observations of the defendant's behavior, independently of any chemical analysis of the defendant's breath or blood. Although the testimony appeared to establish a fact supporting a conviction under ORS 813.010(1)(a), the testimony was not admissible for that purpose. Because the jury might have relied on the testimony to convict the defendant

under ORS 813.010(1)(a), the error in admitting the testimony was not harmless.

Here, by contrast, a chemical analysis of defendant's breath was performed and provided the basis for Bessett's opinion. Bessett's testimony simply would have provided a range for defendant's BAC at 3:08 a.m. when defendant was stopped, based on the result of that chemical analysis, which was concluded at 4:42 a.m. Unlike the HGN test in *O'Key* or the observations of physical indicia of impairment in *Ross* and *Johnson*, Bessett's testimony was derived, using scientific principles, from a chemical analysis of defendant's breath. That testimony was admissible.

Reversed and remanded.