Argued and submitted November 15, 2007, reversed and remanded April 9, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES HENRY JOHNSON, JR.,
*Defendant-Appellant.*

Multnomah County Circuit Court
050545574; A132970

182 P3d 256

William Uhle argued the cause and filed the brief for appellant.

Karla Alderman, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant appeals from his conviction for driving under the influence of intoxicants. ORS 813.010(1). He argues that the trial court erred in permitting a police officer to testify that, based on his observations, defendant's blood alcohol content was at or above the legal limit. The state concedes that the trial court erred, but it contends that the error was harmless because there was overwhelming evidence that defendant was under the influence of alcohol. We accept the state's concession of error, but we conclude that the error was not harmless. Accordingly, we reverse and remand.

At defendant's trial, Officer Pontius, the arresting officer, testified that he saw defendant driving in Portland and stopped him for failing to dim his headlights and for weaving a few inches over the center line. According to Pontius, defendant initially got out of his car but, when Pontius activated his overhead lights, defendant tried to sit back down but lost his balance and essentially fell into the car. Pontius testified that he could smell alcohol on defendant's breath and that defendant's eyes were watery and "droopy." Defendant admitted to him that he had consumed two or three cocktails. Pontius testified that defendant could not find his driver's license in his wallet, passing over it three or four times even though Pontius could see it clearly. Pontius asked defendant to get out of the car to perform a field sobriety test. According to Pontius, while they were standing on the sidewalk, defendant again lost his balance and nearly fell over backwards. He also testified that he asked defendant to recite the alphabet, beginning with the letter C and ending with W, and that defendant made several mistakes. Pontius placed him under arrest, handcuffed him, and put him in the back of his patrol car.

Officer Brennan also testified at defendant's trial. He stated that he arrived on the scene after Pontius had arrested defendant and that, after speaking with Pontius, he moved defendant to his patrol car and took him to the precinct to complete the investigation. According to Brennan, he could also smell alcohol on defendant's breath, and he also observed that defendant's eyes were watery, bloodshot, and

droopy. He stated that defendant was a little unsteady on his feet when walking from one patrol car to the other and that he walked "methodically," taking his steps carefully and slowly.

Brennan testified that, at the precinct, he did not have defendant perform any additional field sobriety tests. He stated that he did not feel that it was necessary, adding, "It was clear to me with what Officer Pontius had told me and my own observations that [defendant] was at or above the legal limit and shouldn't have been driving." Defendant objected, arguing that the officers' observations and Brennan's opinion based thereon could not be used to establish defendant's blood alcohol content (BAC). He moved to strike Brennan's testimony or, alternatively, for a mistrial. The trial court denied the motion.

Brennan testified further that he administered an Intoxilyzer test, which indicated that defendant's BAC was .07 percent. Approximately one hour had passed since Pontius stopped defendant. Brennan later testified that the Intoxilyzer test results were "consistent with [his] observations" and "consistent with what [he had] anticipated." He also testified:

> "I realized with the hour that had passed from the time he was stopped to the time I got him to northeast precinct and got his breath sample that, in fact, in my estimation and observations, that his impairment level went down a little bit and that I believed that when I first contacted him, he was at a level higher than the .07 percent."

Defendant objected to each of Brennan's references to a correlation between defendant's appearance and conduct and his BAC. The trial court overruled the objections.

In her closing argument, the prosecutor stated that there were two ways in which the state could prove defendant's guilt:

> "I can show either that while [defendant] was driving, he had a blood alcohol content of .08 or more; or [defendant] was under the influence of intoxicating liquor. So I would like to, even though we do have a blow in this case, and you

all remember it was .07, I would like to talk about this second way that the State can prove [defendant] was driving under the influence of intoxicating liquors."

After reviewing the evidence that suggested that defendant was under the influence, the prosecutor stated:

"But since we have the breath test, let's talk about it.
* * *

"[Defendant] takes the test one hour after he was driving. Officer Brennan testified that [defendant] appeared to him to be getting more sober over the time that he spent with him. So when he takes the test, he is a .07. but before, when he was driving, Officer Brennan testified that it was his belief that he would have been above a .07."

The jury found defendant guilty.

■ On appeal, defendant renews his argument that Brennan's opinion about his BAC based on his appearance and conduct was not admissible to establish his BAC. As noted, the state concedes that the trial court erred in admitting Brennan's testimony.

The state's concession is well taken. ORS 813.010(1) provides, in pertinent part:

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a)   Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150; [or]

"(b)   Is under the influence of intoxicating liquor, a controlled substance or an inhalant[.]"

In *State v. Ross*, 147 Or App 634, 638, 938 P2d 797 (1997), we observed that "ORS 813.010(1)(a) imposes the legal standard of a scientific measurement of blood alcohol content and provides that the measurement is 'as shown by chemical analysis of the breath or blood of the person.'" Accordingly, we held that "evidence of the observable indicia of intoxication or an opinion about the indicia is not admissible [to prove that a person's BAC was at least .08 percent], because neither is

based on chemical tests of the breath or blood." *Id.* Because Brennan's testimony correlating defendant's appearance and conduct with his BAC suggested that defendant's BAC exceeded the legal limit, that testimony was inadmissible.

We turn to the state's contention that the error in admitting the testimony was harmless. Evidentiary error is not presumed to be prejudicial. OEC 103(1). A judgment will be affirmed despite evidentiary error if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In determining whether an error is harmless, we focus on the "possible influence of the error on the verdict rendered, not whether we, sitting as a fact-finder, would regard the evidence of guilt as substantial and compelling." *Id.*

The state makes two arguments, which we address in turn. First, the state contends that there is little likelihood that the error affected the jury's verdict, because, according to the state, the evidence in the record shows overwhelmingly that defendant's physical and mental faculties were adversely affected to a noticeable or perceptible degree. *See State v. Stroup*, 147 Or App 118, 122, 935 P2d 438 (1997) ("Under ORS 813.010(1)(b), a person is under the influence of intoxicating liquor or a controlled substance when the person's physical or mental facilities are adversely affected to a noticeable or perceptible degree."). The state cites the testimony of Pontius and Brennan, as described earlier in this opinion.

We disagree with the state. Although the evidence that it relies on is consistent with alcohol-impaired physical and mental faculties, it is by no means overwhelming. In addition to the testimony recited above, there is also significant evidence suggesting that defendant was not impaired. For example, both officers testified that, at times, defendant had no trouble walking normally and that he had no trouble getting into and out of the patrol cars. They also testified that defendant's answers to their questions were appropriate; that they did not need to repeat any of their questions; that they observed no problems with defendant's finger dexterity, fine motor skills, or eye-hand coordination; and that defendant readily agreed to take the field sobriety test and the

Intoxilyzer test. Two other witnesses testified that they were with defendant for an hour and a half shortly before he drove and that he showed no signs of being under the influence of alcohol. The record also indicates that defendant's eyes are naturally droopy, which could explain, at least in part, his appearance. Other evidence suggests that defendant was very nervous about being stopped by the police, which could account for some of his conduct that was consistent with impairment—for example, his difficulty finding his driver's license and the errors that he made during the "alphabet" field sobriety test.

In short, the evidence indicating that defendant's mental or physical faculties were adversely affected by alcohol is not so overwhelming that we can conclude that there is little likelihood that the admission of Brennan's testimony affected the jury's verdict.

■ The state next argues that the error was harmless because the jury could not have convicted defendant based on his BAC, given that it was under .08 percent. In other words, in the state's view, the jury must have convicted defendant under ORS 813.010(1)(b) based on impairment, so the error in admitting Brennan's testimony as to defendant's BAC was harmless.

The state's argument misses the point. The jury was not *permitted* to convict defendant based on his BAC, given that it was not proved by chemical analysis to be at least .08 percent. However, as the prosecutor emphasized in her closing argument, Brennan's testimony suggested that defendant's BAC *was* at least .08 percent when he was driving. Nothing in the record indicates that the jury was informed that a conviction under ORS 813.010(1)(a) required proof by chemical analysis—in other words, that Brennan's opinion as to defendant's BAC was insufficient. Because the jury may have found that defendant's BAC was .08 percent or more and convicted him on that ground, the error was prejudicial.

Reversed and remanded.