*3 BALMER, C. J.
This case arises out of defendant’s motion in limine to exclude the testimony of the state’s expert witness in his prosecution for driving under the influence of intoxicants (DUII). The issue presented is whether the state can introduce an expert’s testimony to prove that defendant’s blood alcohol content (BAC) was over the legal limit of .08 percent when a police officer stopped him for driving erratically, even though defendant’s BAC was under the legal limit at the time of his breath test, approximately an hour and a half later. At the pretrial hearing on defendant’s motion, the trial court excluded the expert’s testimony interpreting defendant’s breath test results to the extent that that testimony would explain that defendant’s BAC was over .08 percent at the time he was driving. The state filed an interlocutory appeal of that ruling and the Court of Appeals reversed, concluding that the expert’s testimony was derived from a chemical analysis of defendant’s breath and was, therefore, admissible. State v. Eumana-Moranchel, 243 Or App 496, 260 P3d 501 (2011). We now affirm the decision of the Court of Appeals.
The parties stipulated to the following facts for purposes of the hearing on defendant’s motion in limine. On September 27, 2008, at 3:08 a.m., a police officer stopped defendant on a public road in Multnomah County after the officer observed defendant’s pickup truck weaving across the center line. The officer noticed that defendant’s eyes were glassy and that his movements were slow and lethargic. Defendant told the officer that he had had three beers that evening, but had had no alcohol since 2:00 a.m., when the bars closed. A second officer arrived on the scene. She noted the smell of alcohol emanating from defendant’s truck. She administered field sobriety tests, which defendant failed. The officer arrested defendant for DUII, advised him of his Miranda rights, and transported him to the police station. At 4:42 a.m., the officer administered a breath test that measured defendant’s BAC at .064 percent, which was below the legal limit of .08 percent.[1]
*4 Defendant was charged by information with “misdemeanor driving while under the influence of intoxicants.” The offense of driving under the influence of intoxicants is defined in ORS 813.010(1), which provides:
“A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:
“(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;
“(b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant; or
“(c) Is under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance.”
The information did not identify a particular paragraph of ORS 813.010 that the state accused defendant of violating. The state, thus, was free to establish at trial that defendant violated ORS 813.010 either by driving while impaired, under ORS 813.010(l)(b) or (c), or by driving with a BAC of at least .08 percent, under ORS 813.010(l)(a). See State v. King, 316 Or 437, 446, 852 P2d 190 (1993), overruled in part on other grounds by Farmers Ins. Co. v. Mowry, 350 Or 686, 697, 261 P3d 1 (2011) (ORS 813.010(l)(a), (b), and (c) describe single offense, and jury need not agree on which test results (BAC or field sobriety tests or combination) established that the driver was under the influence).
Before trial, the state indicated that it intended to offer an expert’s testimony to establish defendant’s guilt under ORS 813.010(l)(a) — to prove that defendant drove with a BAC of .08 percent — notwithstanding that his BAC at the time of the test was below that legal limit. As noted, defendant moved in limine to exclude that testimony.
At the hearing on the motion in limine, the prosecution proffered the testimony of Shane Bessett, an expert in the field of alcohol absorption and dissipation, to establish that, although defendant’s BAC at the time *5 of his breath test was .064 percent, his BAC when he was stopped, one hour and 34 minutes earlier, was between .08 and .10 percent and, therefore, above the legal limit. Bessett testified that he had arrived at that range by using a method called retrograde extrapolation, which he explained as follows: Bessett testified that men and women eliminate alcohol at an average rate of .018 percent per hour,[2] but that the specific elimination rate for any particular individual varies according to his or her tolerance for alcohol. The least alcohol-tolerant drinker would eliminate alcohol at a rate of .01 percent per hour, while the most tolerant drinker would eliminate alcohol at a rate of up to .025 percent per hour.[3] For that reason, Bessett testified, retrograde extrapolation would produce a range for a driver’s BAC at any given time, rather than a single, specific number. Further, Bessett testified, to calculate a person’s BAC at a given time, he would need to know the time of the test, the time of the driver’s last consumption of alcohol, and the time that the driver was stopped.
Bessett testified that, in this case, based on information in the police reports, he assumed that defendant had stopped drinking by 2:00 a.m., that he was stopped and arrested at 3:08 a.m., and that the breath test at 4:42 a.m. revealed that his BAC was .064 percent.[4] Based on those assumptions, Bessett then calculated that defendant, having eliminated the alcohol in his blood at a rate of between .01 and .025 percent per hour for one hour and 34 minutes, likely would have had a BAC of between .08 and .10 percent when he was driving.
The trial court granted defendant’s motion to exclude Bessett’s testimony. In reaching that result, the *6 court concluded that it was bound by the Court of Appeals opinion in State v. Johnson, 219 Or App 200, 182 P3d 256 (2008), which, in its view, prevented the state from convicting a defendant for DUII unless a chemical analysis, standing alone, proved the defendant’s BAC to be at least .08 percent.[5] The trial court entered an order excluding
“(1) Any testimony by State’s expert witness referring to BAC content if that testimony would permit the jury to convict defendant based on his BAC.
“(2) Any testimony by State’s expert witness that his BAC at the time of the alleged stop was at least .08 percent.”
That ruling effectively prevented the state from establishing defendant’s guilt under ORS 813.010(l)(a).
The state appealed that pretrial ruling, and the Court of Appeals reversed, concluding that Bessett’s testimony concerning retrograde extrapolation was admissible, because it “was derived, using scientific principles, from a chemical analysis of defendant’s breath.” Eumana-Moranchel, 243 Or App at 502.
In this court, defendant argues that ORS 813.010 provides three methods for the state to prove that a defendant was driving under the influence of intoxicants. Two of those methods, set out in ORS 813.010(l)(b) and (c), require proof that the defendant drove while impaired by alcohol or controlled substances. The third, set out in ORS 813.010(l)(a), does not require proof of impairment. Rather, that paragraph requires only that the state prove that the defendant drove with a BAC of .08 percent or more “as shown by chemical analysis of the breath or blood of the person.” (Emphasis added.) Defendant argues that, under the plain words of ORS 813.010(l)(a), only a chemical analysis can *7 show a BAC of .08 percent or more. Retrograde extrapolation is a formula, not a chemical analysis, defendant asserts, and, therefore, it cannot be used to show a particular BAC. He contends that only the numerical result of the chemical analysis (the breath test result) is admissible to show that he drove a vehicle while he had .08 percent or more by weight of alcohol in his blood. According to defendant, any other evidence is irrelevant for that purpose.
We begin our analysis by examining the words of the statute. For convenience, we repeat them here:
“(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:
“(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;
“(b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant; or
“(c) Is under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance.”
We first observe that ORS 813.010(1) prohibits driving under the influence of intoxicants: “A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person” is under the influence. (Emphasis added.) As this court stated in State v. Clark, 286 Or 33, 38, 593 P2d 123 (1979), quoting State v. Clark, 35 Or App 851, 856, 583 P2d 1142 (1978),
“‘[t]he gravamen of [the predecessor statute to ORS 813.010] is driving with a certain blood alcohol level. The legislature has seen fit to forbid this act, without more.’”
Thus, the focus of the statute is on the act of driving, and doing so while impaired.
The statute then sets out two ways to prove that a person drove while under the influence of intoxicants: The state can establish that the defendant’s BAC was .08 percent or more, ORS 813.010(l)(a), regardless of observable symptoms, or the state can prove that the person was “under the influence of intoxicating liquor, a controlled substance, *8 or an inhalant,” that is, that the defendant was adversely affected by intoxicants to a perceptible degree, ORS 813.010(l)(b), (c). See King, 316 Or at 446 (“The legislature did intend that a person could commit [the offense of DUII] by driving with the specified BAC but with no perceptible impairment or by driving with a legally permissible or unknown BAC but while nonetheless perceptibly impaired!.]”); Clark, 286 Or at 39 (in making it an offense to drive with a certain BAC, “the legislature apparently assumed, based on scientific studies and medical knowledge, that the physical and mental condition of a driver with such a level of blood alcohol is impaired to such a degree as to make it unsafe for him to drive a motor vehicle, regardless of observable physical symptoms”). Under either scenario, the state must prove that the driver had the proscribed BAC or was perceptibly impaired at the time that he or she was driving.[6] ORS 813.010(l)(a), (b), and (c) (a person commits the offense of DUII “if the person drives a vehicle while the person” has a BAC of 0.08 percent or more or was impaired).
*9 This case requires us to consider how the state may prove that defendant violated ORS 813.010(l)(a). Under that statute, BAC at the time of driving must be “shown by chemical analysis of the breath or blood.” (Emphasis added.) However, it is virtually always the case that the chemical test of the breath or blood is administered some time after the person has stopped driving. That is so for several reasons. First, a breath test may not be administered until after the driver actually has been arrested for DUII. ORS 813.100(1) (“Any person who operates a motor vehicle *** shall be deemed to have given consent * * * to a chemical test of the person’s breath *** for the purpose of determining the alcoholic content of the person’s blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010L]”). In all cases, a certain amount of time will have passed after the stop and before the arrest, while a police officer investigates the crime. In addition, to test the driver, the police officer must use a specific machine, the Intoxilyzer 5000 or the Intoxilyzer 8000, which are the only breath test machines approved by the Oregon State Police for use in performing a chemical analysis of a person’s breath, OAR 257-030-0060; OAR 277-030-0120 (so stating), and which typically are located at the police station. Finally, before administering the test, the police officer must inform the person of the consequences of refusing to take a breath test, ORS 813.100(l)(a), and then wait at least 15 minutes to be certain that the person has not taken anything by mouth, vomited, or regurgitated. OAR 257-030-0070(2)(a) (Intoxilyzer 5000); OAR 257-030-0130(2)(a) (Intoxilyzer 8000).
Importantly, a person’s BAC changes during the time between being stopped and undergoing a breath test. Bessett testified at the hearing on defendant’s motion in limine that 80 percent of consumed alcohol enters the blood within five to 10 minutes, and 100 percent enters the blood within 30 to 60 minutes. Moreover, as discussed above, alcohol is eliminated from the blood at a rate between .01 and .025 percent per hour. It follows that a chemical test result alone never “shows” the actual BAC of the driver at the time of driving.
Something more is necessary to connect the breath test result to the statutory requirement of a BAC *10 of .08 percent or more at the time of driving. This court has suggested that, when a breath test taken after the time of driving establishes a BAC of .08 percent or higher, the trier of fact reasonably may infer the necessary connection. That is, the jury may infer that the driver’s BAC while driving was at least as high as the later test result. See State v. Parker, 317 Or 225, 232 n 9, 855 P2d 636 (1993) (stating, in dictum, that, in case where the defendant had a BAC of .07 percent five hours after driving, the state did not need to call an expert on the dissipation of blood alcohol content, because the fact that blood alcohol dissipates over time is common knowledge). In this case, defendant’s breath test established a BAC at the time of the test of less than the legal limit, at .064 percent. The question here, then, is whether, in that circumstance, the state may attempt to connect the breath test result to the statutory requirement of .08 percent BAC or more while driving with evidence that is not necessarily common knowledge: the precise rate of dissipation.
We conclude that the answer is yes. As just discussed, ORS 813.010(l)(a) provides that a person commits the offense of driving under the influence of intoxicants if, while driving, the person “has 0.08 percent or more by weight of alcohol in the blood * * * as shown by chemical analysis of the breath or blood [.]” Because a breath test result will never “show” a person’s BAC at the exact time of driving, the state must be able to offer relevant evidence to explain how a driver’s BAC at the time of the test “shows” that he or she had .08 percent or more by weight of alcohol in the bloodstream at that earlier point. That is true whether the driver’s BAC was exactly .08 percent, more than .08-percent, or less than .08 percent. And an expert’s testimony explaining retrograde extrapolation, which uses a person’s BAC at the time of the test to establish, based on a scientific formula, that the person’s BAC was above the legal limit at a certain earlier time, is relevant and admissible for that purpose. OEC 401 (evidence is relevant if it makes any fact of consequence to the determination of the action more probable); OEC 402 (all relevant evidence is admissible unless otherwise provided).
Defendant nevertheless argues that, under ORS 813.010, a chemical analysis, and only a chemical analysis, *11 can “show” that a person drove while over the legal limit. However, as this court stated in Clark, if the legislature had intended for the numerical breath test result to be the only evidence admissible under former ORS 487.540(l)(a), the predecessor statute to ORS 813.010(l)(a), it would have worded the statute to make that limitation clear.[7] 286 Or at 44-45. The court went on:
“[T]he more reasonable reading of the statute is that the driver must be found in fact to have .10 percent blood alcohol [the legal limit at that time] and that this must be shown by a chemical analysis. In other words, the state cannot establish a violation of [former] ORS 487.540(l)(a) without a chemical analysis properly performed, but the analysis must ‘show’ the actual presence of that percentage in the blood, not merely in the instrument reading.”
Id. at 45 (emphasis in original).
The court in Clark addressed a somewhat different question than is presented here: whether a defendant was entitled to offer evidence, such as the testimony of nonexpert witnesses relating to defendant’s observable conduct, to impeach the accuracy of the result of a chemical analysis. Nonetheless, we think that the court’s reasoning in Clark is equally applicable in this case, where the state is the party seeking to offer additional evidence to explain the results of the chemical analysis. As the court stated in Clark, the statute requires the chemical analysis to “show” the actual presence of the alcohol in the blood at the time of driving; it does not merely require a certain instrument reading. That is, under the statute, the “chemical analysis” is the numerical result that the machine produces together with an explanation of that result. That explanation can be simply an inference that blood alcohol rates dissipate over time, or, as in this case, an expert’s testimony explaining that retrograde extrapolation shows the actual presence of the prohibited percentage of alcohol in a driver’s blood when he or she was driving.
Defendant contends, on the contrary, that this court, in State v. O’Key, 321 Or 285, 899 P2d 663 (1995), held *12 that a chemical analysis is the “only” manner of proving intoxication under ORS 813.010(l)(a). Defendant is incorrect. In O’Key, this court held that evidence that the defendant failed a field sobriety test — the horizontal gaze nystagmus test — was not admissible under ORS 813.010(l)(a) to prove that the defendant, who had refused to take a breath test, drove with a BAC of .08 percent or more. The court held that
“the offense of DUII with a .08 percent or more BAC may be proved only by a ‘chemical analysis of the breath or blood of the person[.]’ *** An HGN test does not involve a chemical analysis of breath or blood. Hence, an HGN test is not a chemical test under ORS 813.010(l)(a). Under ORS 813.010(l)(a), HGN test evidence is not, therefore, admissible to prove that a person had a BAC of .08 percent or more.”
321 Or at 308 (emphasis in original). It is, of course, true that an expert’s testimony explaining retrograde extrapolation also is not a “chemical test.” However, defendant does not dispute that the state intends to offer a chemical test— defendant’s breath test result — showing that defendant had a BAC of .064 percent at the time of the test, to prove that defendant drove while having a BAC of .08 percent or more. Moreover, as the Court of Appeals held below, Eumana-Moranchel, 243 Or App at 450, and as we have explained, the expert’s retrograde extrapolation analysis is based on and derived from that chemical test. Thus, much as the observable conduct testimony in Clark explained that the chemical test result did not “show” that the defendant drove with the prohibited BAC, here, the retrograde extrapolation analysis, applied to the chemical test result, explains that the chemical test “shows” that defendant drove with a BAC of .08 percent or more.
Context supports our conclusion that the legislature did not intend to prohibit the state from introducing evidence, based on the breath test result, that a person’s BAC was over the legal limit at the time of driving. First, in ORS 813.100, Oregon’s implied consent statute, the legislature expressly imposes various administrative penalties on a driver whose BAC is over the legal limit at the time of the test. ORS 813.100 provides, in part:
*13 “(3) If a person refuses to take a test under this section or if a breath test under this section discloses that the person, at the time of the test, had a level of alcohol in the person’s blood that constitutes being under the influence of intoxicating liquor under ORS 813.300 [providing that a BAC of .08 percent or more constitutes being under the influence of intoxicating liquor], the person’s driving privileges are subject to suspension under ORS 813.410 and the police officer shall [take certain enumerated actions.]
“(4) If a blood test under this section discloses that the person, at the time of the test, had a level of alcohol in the person’s blood that constitutes being under the influence of intoxicating liquor under ORS 813.300, the person’s driving privileges are subject to suspension under ORS 813.410 and the police officer shall report to the department within 45 days of the date of arrest that the person failed the blood test.”
(Emphasis added.) The legislature’s specificity in pointing to the time of the test in those statutes suggests that, had the legislature intended the trier of fact to consider only a person’s BAC at the time of the breath test in determining whether a person has committed the offense of driving while under the influence of intoxicants under ORS 813.010(l)(a), it could have done so by inserting the words “at the time of the test” into ORS 813.010(l)(a).[8]
Second, ORS 813.300(1), which deals with the use of BAC as evidence, also is consistent with our conclusion that evidence helping to explain that a person’s BAC was over the legal limit while he or she was driving is admissible under ORS 813.010(l)(a). That statute provides:
“At the trial of any civil or criminal action, suit or proceeding arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicants, if the amount of alcohol in the person’s blood at the time alleged is less than 0.08 percent by weight of alcohol as shown by chemical analysis of the person’s breath or blood, it is indirect evidence that may be used with other evidence, if any, to determine whether or not the person was then under the influence of intoxicants.”
*14 (Emphasis added.) That statute describes the use of evidence at trial in a case “arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicants,” including, as relevant here, a prosecution for DUII. Under that statute, if a person’s BAC “at the time alleged” is less than .08 percent as shown by a chemical analysis of the person’s breath or blood, it is indirect evidence that may be used with other evidence to prove that the person was under the influence of intoxicants. Because the “gravamen of [ORS 813.010] is driving with a certain blood alcohol level,” Clark, 286 Or at 38, the reference in ORS 813.300(1) to “the amount of alcohol in the person’s blood at the time alleged” (emphasis added) is a reference to BAC at the time of driving. However, as we already have explained, the “chemical analysis of the person’s breath” — the breath test — does not prove the amount of alcohol in the person’s blood at the time of driving. Retrograde extrapolation is the mechanism by which the amount of alcohol in a person’s blood at the time alleged is “shown” to be more or less than 0.08 percent.[9] It provides the necessary connection between evidence of a person’s BAC at the time of the test and his or her BAC while driving.[10]
We hold that the state should have been permitted to offer the expert’s testimony explaining retrograde extrapolation to establish that defendant’s BAC was over .08 percent at the time he was driving.
The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

 The officer first administered a breath test at approximately 4:30 a.m. that measured defendant’s BAC at .064 percent. The parties and the expert have relied *4 on the second, 4:42 a.m. breath test result in this case and we do the same in this opinion.

 Bessett testified that men and women eliminate alcohol at the same rates.

 Because those parameters would encompass “virtually everyone,” which he described as 98 out of 100 people tested, Bessett testified that there was no margin of error.

 Bessett testified that it was important to know when a subject stopped drinking, because 80 percent of alcohol is absorbed into the bloodstream within five to 10 minutes of consumption, and all alcohol consumed ordinarily is absorbed into the bloodstream within 30 to 60 minutes. In this case, Bessett assumed that, when defendant was stopped at 3:08 a.m., one hour and eight minutes after defendant stopped drinking, defendant would have been eliminating alcohol, not absorbing it. Defendant did not challenge that assumption.

 In Johnson, a breath test revealed that the defendant’s BAC was .07 percent at the time of the test, approximately an hour after the defendant was stopped. At the defendant’s trial in that case, the arresting officer testified that, based on his observations, the defendant’s BAC was at or above .08 percent at the time he was stopped. The Court of Appeals accepted the state’s concession that evidence of observable indicia of intoxication is not admissible to prove that a defendant’s BAC exceeded the legal limit, because it is not based on a chemical test of the defendant’s breath or blood. 219 Or App at 204-05.

 In contrast, many other states explicitly require proof of a chemical test result over the legal limit at the time of the test or within a certain period of time after driving. See, e.g., Alaska: Alaska Stat § 28.35.030(2) (offense committed if driver has .08 percent BAC within four hours of driving); Arizona: Ariz Rev Stat § 28-1381(2) (offense committed if driver has .08 percent BAC within two hours of driving); California: Cal Veh Code § 23152(b) (rebuttable presumption of guilt if driver has .08 percent BAC at time of test within three hours of driving); Delaware: Del Code § 4177(5) (offense committed if driver has .08 percent BAC or more within four hours of driving, “without regard to the person’s alcohol concentration at the time of driving”); Kansas: Kan Stat Ann § 8-1567(2) (offense committed if driver has .08 percent BAC within three hours of driving); Kentucky: Ky Rev Stat Ann § 189A.010(l)(a) (offense committed if driver has .08 percent BAC at time of test within two hours of driving); Minnesota: Minn Stat § 169A.20, subd.l (5) (offense committed if driver has .08 percent BAC as measured within two hours of driving); Montana: Mont Code Ann § 61-8-401(4)(c) (rebuttable inference of guilt if driver has .08 percent BAC at time of test); Nevada: Nev Rev Stat § 484C.110(l)(c) (offense committed if driver has .08 percent BAC within two hours of driving); New Mexico: NM Stat Ann § 66-8-102(0(1) (offense committed if driver has .08 percent BAC within three hours of driving); North Dakota: ND Cent Code § 39-08-0 l(l)(a) (offense committed if driver has .08 percent BAC at time of test within two hours of driving); Oklahoma: Okla Stat § 47-ll-902v (A)(1) (offense committed if driver has .08 percent BAC within two hours of driving); Pennsylvania: Pa Cons Stat § 3802(a)(2) (offense committed if driver has .08 percent BAC within two hours of driving); Utah: Utah Code Ann § 41-6a-502(l)(a) and (c) (offense committed if driver has .08 percent BAC at the time of the test or at the time of operating vehicle); Washington: RCW § 46.61.502(l)(a) (offense committed if driver has .08 percent BAC within two hours of driving); Wyoming: Wyo Stat Ann § 31-5-233(b)(ii) (offense committed if driver has .08 percent BAC at time of driving or within two hours of driving).

 And, as discussed above, at note 6, the DUII statutes of many other states clearly specify that the operative BAC is the driver’s BAC at the time of the test.

 Those words are not found in ORS 813.010(l)(a) and we are, of course, admonished “not to insert what has been omitted.” ORS 174.010.

 And it follows that, if retrograde extrapolation shows that a person’s BAC at the time of driving was less than .08 percent, then, under ORS 813.300(1), the driver’s BAC still is admissible as indirect evidence that may be used with other evidence to prove that the driver was under the influence of intoxicants.

 Both defendant and the state contend that legislative history supports their respective positions. However, neither party has pointed to any legislative history showing that the legislature actually considered whether expert testimony explaining to the jury the relationship between a BAC test result and a defendant’s BAC some time earlier, at the time of driving, would be admissible. Nor has either party identified any legislative history suggesting that the legislature intended that the state’s ability to convict a driver under ORS 813.010(l)(a) would depend only on the driver’s BAC at the time of the test. In short, nothing in the legislative history suggests that the legislature had any express intention to require the state to prove BAC only with the numerical result of a breath test taken at some point after the person stopped driving.