No. 318 April 9, 2025 605

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ELIJAH SYDNEY TAVARES,
*Defendant-Appellant.*

Deschutes County Circuit Court
22CR12038; A180879

Alicia N. Sykora, Judge.

Submitted October 22, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment convicting him of driving under the influence of intoxicants (DUII), ORS 813.010 (2021), *amended by* Or Laws 2023, ch 498, § 3. In a single assignment of error, defendant contends that the trial court erred in granting the state's motion *in limine* to admit evidence related to the content of defendant's blood, which was drawn after defendant was pulled over for speeding. That evidence consisted of expert testimony from Anderson, a toxicologist who had reviewed the documentation and result of tests that several other lab analysts conducted, and Anderson's report analyzing the content of defendant's blood. Defendant argued that Anderson's testimony and report contained testimonial hearsay statements from the analysts who had conducted the testing, and, consequently, that the admission of that evidence in the absence of the other analysts' testimony violated his right to confrontation under the Sixth Amendment to the United States Constitution. On appeal, defendant renews those arguments. For the reasons stated below, we conclude that any error in admitting Anderson's testimony and report was harmless. Accordingly, we affirm.

The relevant facts are undisputed. Officer Childers stopped defendant for speeding. As he approached defendant's car, Childers smelled an "overwhelming" scent of burnt marijuana coming from defendant's vehicle. Upon seeing and interacting with defendant, Childers observed that defendant had droopy eyelids, bloodshot eyes, and dilated pupils, and that his speech was slow and mumbled. Based on those indicators, Childers suspected that defendant was impaired and initiated a DUII investigation.

Childers asked defendant when he had last used any sort of cannabis, and defendant responded that he had smoked "one or two bowls" a couple hours prior to driving. When Childers asked defendant to rate himself on a scale from zero to 10, with zero being completely sober and 10 being "the highest [he had] ever been," defendant rated himself "like a three." Defendant agreed to take field sobriety tests, and, during his performance of those tests, Childers observed several validated clues of impairment.

Childers arrested defendant for DUII and transported him to the hospital, where he obtained a sample of defendant's blood. Childers then sent defendant's blood sample to NMS Labs, a large private laboratory in Pennsylvania, and requested that the lab conduct testing entitled "DUID/DRE Panel ProofPOSITIVE®, Blood."

Before defendant's trial, the state filed a motion *in limine* to admit testimony and a report about that testing from Anderson, a forensic toxicologist from NMS Labs. Anderson did not participate in or observe the testing of defendant's sample in the lab. Rather, Anderson's "main responsibility as a toxicologist with NMS Labs is to sign out reports"—a process that required him to "electronically review" records of all the work that the lab analysts had conducted on defendant's sample. Based on his review of those records, he wrote and signed a report that he testified "accurately reflect[ed his] analysis of the testing that was done" in defendant's case.

Defendant opposed the state's motion *in limine* to admit Anderson's testimony and report, arguing that its admission would "violate [his] right to confront witnesses under the Sixth Amendment of the United States Constitution" because that evidence relied on testimonial hearsay statements of the analysts who participated in testing defendant's sample.

At a hearing on the state's motion to admit the evidence, the state offered testimony from Anderson regarding the lab's testing procedures and the testing of defendant's sample. According to Anderson, NMS Labs uses an assembly line approach in which multiple analysts across different departments handle various testing tasks for each sample. Anderson explained that, for each sample, the lab conducts an initial drug screen, and if the result is positive, the sample is then subjected to a confirmatory test. He described the process of completing those tests in detail. After all the tests for a particular sample are complete, the lab's information system prepares a draft report with the results and sends it to Anderson for review. In conducting his final review and before signing the report, Anderson checks that "all the test procedures [were] completed," and he "review[s] the data,

making sure that \*\*\* the data supports the actual results on the report."

With respect to defendant's case in particular, Anderson explained that he conducted the final review of the analysts' tests of defendant's blood. He determined that defendant's blood contained an active component of marijuana (delta-9 THC) as well as one active metabolite (11-hydroxy delta-9 THC) and one inactive metabolite (delta-9 carboxy THC). Anderson authored and signed a report containing those results.

Following the hearing, the court granted the state's motion to admit Anderson's testimony and report. The court determined that "Anderson's report and opinions [were] testimonial," and that "bench analysts' testimonial evidence [was] not being offered by the State." Thus, the trial court concluded that "defendant's right to confront[ation] will be satisfied \*\*\* because Mr. Anderson will be subject to cross examination in trial."

At trial, Childers testified about his interactions with defendant during the traffic stop, including his observations about the smell of marijuana, defendant's bloodshot eyes, droopy eyelids, and dilated pupils, as well as his slowed speech and performance on the field sobriety tests. Childers further testified, and the state introduced his bodycam video showing, that defendant participated in field sobriety tests, admitted to smoking "one or two bowls" a couple hours before driving, and stated that he was "like a three" on a scale of zero to 10, with 10 representing "the highest [he had] ever been."

Anderson also testified and described the test results, which indicated that defendant had marijuana in his system during the traffic stop. In particular, Anderson explained that defendant's blood contained delta-9 THC in a concentration of 5.1 nanograms per millimeter. When asked whether that particular concentration of THC would have been enough to impair defendant's driving, Anderson responded that there was "just no magic number or blood level" that had been shown to be sufficient to impair a person's driving. Anderson further explained that "as a forensic

toxicologist evaluating drugs on a piece of paper * * * I cannot tell how these drugs would actually affect a particular person." In Anderson's view, to be able to tell whether a person is actually impaired by marijuana "it has to come from * * * observed behavior, witness behavior, officers interacting with them, field sobriety tests, [or] drug recognition expert tests."

The jury convicted defendant of DUII, and defendant now appeals.

On appeal, defendant renews his argument that the admission of Anderson's testimony and report violated his right to confrontation under the Sixth Amendment to the United States Constitution.[1] Based on the record as a whole, we conclude that, even if admission of Anderson's testimony and report violated defendant's confrontation right, any error was harmless.[2]

A federal constitutional error is harmless, such that the conviction will be upheld, "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986) (describing the test announced in *Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967)). In reviewing the whole record to determine whether an error was harmless, we consider "the importance of the [improperly admitted evidence] in the prosecution's case, whether the [evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [improperly admitted evidence] on material points, the

___

[1] Defendant's argument is similar to the one the defendant raised in *Smith v. Arizona*, 602 US 779, 144 S Ct 1785, 219 L Ed 2d 420 (2024), a recent United States Supreme Court case addressing Confrontation Clause limitations on the admission of evidence. *Cf. State v. Widerman*, 339 Or App 380, ___ P3d ___ (2025) (concluding that the admission of a toxicologist's testimony and report violated the defendant's Article I, section 11, confrontation right).

[2] Defendant does not raise an argument under the Oregon Constitution. In *Widerman*, 339 Or App at 403-04, we concluded that admission of evidence similar to that here violated Article I, section 11, of the Oregon Constitution. Even if defendant had raised an argument under Article I, section 11, any error would be harmless under the state constitution for the same reasons explained below. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (explaining that an error is harmless for state constitutional purposes if there is little likelihood that erroneously admitted evidence affected the verdict).

extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 684.

Here, defendant argues that the admission of the disputed evidence was harmful because "whether defendant was impaired by cannabis was the central factual issue in the case." *See* ORS 813.010 (2021) (stating that "[a] person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person *** [i]s under the influence of *** cannabis."); *see also State v. Eumana-Moranchel*, 352 Or 1, 7-8, 277 P3d 549 (2012) (explaining that one way to establish that a person drove while under the influence of intoxicants is when "the state can prove that *** the defendant was adversely affected by intoxicants to a perceptible degree"). Defendant contends that, without the admission of defendant's blood test results, "the jury might have had reasonable doubt that [he] was impaired by marijuana when he drove." Although the state agrees with defendant's characterization of the central issue in this case, the state contends that the challenged evidence had no bearing on that issue. In the state's view, Anderson's testimony and report did not address defendant's level of impairment and, instead, only served to corroborate defendant's admission that he had used cannabis prior to driving. We agree with the state.

Defendant admitted to smoking "one or two bowls" a couple hours prior to driving. Thus, the only question for the jury was not whether defendant had used marijuana, but whether he was impaired by it. As to that issue, Anderson expressly testified that he was not able to determine whether defendant was impaired. Anderson testified that the lab results showed that defendant had 5.1 nanograms per millimeter of THC in his blood the night of the traffic stop; however, Anderson also explained that there was "no magic number or blood level" that had been shown to be sufficient to impair a person's driving. Based on his review of data alone, Anderson stated that he "cannot tell how these drugs would actually affect a particular person." Rather, Anderson stated that to be able to tell whether a person was actually impaired by marijuana "it has to come

from * * * observed behavior, witness behavior, officers interacting with them, field sobriety tests, [or] drug recognition expert tests." And, as described above, that evidence in fact came from Childers's testimony in which he described his observations of defendant throughout the traffic stop, including that defendant had bloodshot eyes, dilated pupils, slowed speech, and that he displayed several validated clues of impairment during his performance of the field sobriety tests. Thus, Anderson's testimony and report did not bear on the issue of whether defendant was impaired and, consequently, did not contribute to the jury's guilty verdict.

In sum, we conclude that any error in granting the state's motion to admit Anderson's testimony and report was harmless beyond a reasonable doubt.

Affirmed.